Argued and submitted December 11, 1987, affirmed April 20, reconsideration denied June 10, petition for review denied July 12, 1988 (306 Or 195) reconsideration on attorney fees denied July 29, petition for review on attorney fees denied August 30, 1988 (306 Or 528)

In the Matter of the Marriage of

STREET,
*Respondent,*

*and*

STREET,
*Respondent,*

CORL et al,
*Co-Respondents,*

STREET,
*Co-Respondent-Appellant.*

(CV86-0282; CA A44026)

753 P2d 424

Ben C. Fetherston, Jr., Salem, argued the cause for appellant. With him on the briefs was Clark, Lindauer, McClinton, Todd & Krueger, Salem.

John L. Hemann, Salem, argued the cause for respondent Louise A. Street. With him on the brief was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

No appearance for respondent Robert D. Street.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Young, J., deceased.

## JOSEPH, C. J.

This case involves a dispute between N. D. Street (father) and his former daughter-in-law Louise A. Street (wife). Father began sending his son, R. D. Street (husband), and husband's wife money to build a new house. Months later, husband and wife executed notes and trust deeds in favor of father. After wife had signed two of the notes, she and husband separated, and husband petitioned for dissolution of their marriage. Wife joined father[1] as co-respondent in the dissolution proceeding and asked the trial court to declare the notes and deeds unenforceable. The trial court found that the money was a gift and, as part of the dissolution judgment, declared the notes and deeds unenforceable as to her. Only father appeals, and we affirm.

Husband and wife married in 1977. Father practices law in Virginia and generously supported husband and wife throughout their marriage, while husband was in school and after. Wife estimates that father's family gave the couple, in addition to money for their new house, approximately $235,000 during their nine-year marriage.

Husband began practicing law in 1983, and since then his gross income has been approximately $25,000 per year. Wife, a teacher, rarely worked during the marriage. In 1984, husband and wife decided to build a new house and purchased a lot in Corvallis. From July, 1984, to February, 1985, father sent husband and wife approximately $160,000 to pay for construction of the new house.[2] In February, 1985, father sent another $30,000 and $45,000 more in March, 1985.

On April 2, 1985, husband and wife executed a $50,000 promissory note secured by a trust deed on their home and land. On April 8, 1985, father sent another $90,000. On June 11, 1985, husband and wife executed a $90,000 promissory note secured by another trust deed. Both notes were

---

[1] Robert V. Corl and H. A. Street, as trustees for the R. D. and D. A. Street trust, were also joined as co-respondents but are not parties to this appeal.

[2] The record does not reveal, and neither husband nor wife gave proof of, precisely how much money was sent before February, 1985. However, the notes executed after the money was sent indicate that the total amount was $365,000 and that $205,000 was sent after February, 1985. Thus, we assume that $160,000 was sent before February, 1985.

drafted by husband and were payable to father. Both stated an annual interest rate of 10 percent and were payable on demand, but neither contained a schedule of payments of interest or principal. On June 14, 1985, father sent another $40,000. On July 26, 1985, husband executed two notes, one for $100,000, payable to father, and another for $125,000, payable to H. A. Street (husband's uncle) as trustee for the R. D. and D. A. Street trust.[3] Those notes, also secured by trust deeds, bore interest at 10 percent per year, with a minimum interest-only payment of $10,000 due each March. No payments were ever made on any of the notes.

In October or November, 1985, husband and wife separated. In January, 1986, father sent the deeds to husband with instructions to record them, which husband did, apparently in January, 1986.[4] Husband filed his dissolution petition in February, 1986. In June, 1986, father demanded full payment on the $50,000 and $90,000 notes and interest payments on the other notes and threatened foreclosure if the payments were not made. Wife asked the court to declare the $50,000 and $90,000 notes void and unenforceable as to her, because the money was a gift or because her signature was induced by fraud or because of a lack of consideration. The trial court found that the money was a series of gifts.[5]

Nothing in the record supports wife's claims of fraud or lack of consideration. The only issue is whether the money father provided for the house constituted loans, in which case the notes are enforceable, or gifts. We review *de novo*. Wife has the burden to establish by clear and convincing evidence that father intended to make gifts. *Johnson v. Steen,* 281 Or 361, 369, 575 P2d 141 (1978); *Estate of McConnell v. McConnell,* 71 Or App 795, 802, 694 P2d 982 (1985).

Father contends that, because wife signed notes and

---

[3] Apparently $125,000 of the money came from the R. D. and D. A. Street Trust and not from father. The parties seemingly agree that that $125,000 was evidenced by the $125,000 note signed only by husband. Thus, the trust monies have no effect on our holding that the money transfers from father were gifts.

[4] We say "apparently," because wife contended in her pleadings that the trust deeds that she signed were not recorded until June, 1986. On the current record, we cannot determine precisely when those deeds were recorded, but the difference in dates is of no consequence to our decision.

[5] Husband does not appeal from the dissolution judgment.

trust deeds, she accepted the money as a loan. *See Grignon v. Shope,* 100 Or 611, 616, 197 P 317 (1921).[6] In *Grignon,* however, the supposed donee "urged" the donor to take a note in exchange for the money, which "indicated" to the court that there was no acceptance of the money as a gift. 100 Or at 617. Here, the notes were executed several months after the money was delivered, and wife testified that she signed the notes because husband asked her to. She testified that she always understood the money to be gifts. The evidence is persuasive that, until husband presented the papers for her to sign, neither husband nor she acted inconsistently with an intent to accept the money as gifts to help them build their house.

The dispositive question is whether father intended each transfer of money as a gift when it was done.[7] In his pleadings and in his brief in this court, father strenuously argues that he always intended the money to be a loan and never intended a gift. However, we have no direct evidence of his intent. Father did not testify at trial and was never deposed.

Husband testified that he, not wife, discussed the financial arrangements with father and that he and father always intended the money to be a loan. Wife agreed that she rarely discussed the matter with father but said that she frequently discussed it with husband and that she understood from both husband and father that the money was a gift. She also testified that she and husband never discussed repaying any of the money, even when the notes were signed.

Father began sending the money in July, 1984. The first notes were not executed until nine months later, in April, 1985. Subsequent notes were executed well after the purportedly loaned money had been sent. Even then, the notes were in amounts less than the money delivered. Although they were purely intra-family transactions, the lapse of time between receipt of the money and execution of the notes suggests that the money was a gift and that the notes were meant to serve

---

[6] Father cites no authority in support of his no acceptance argument. *Grignon* is the best authority that our research has revealed.

[7] Wife contends that we should apply the rule that a transfer without consideration from a parent to a child is presumed to be a gift. We need not decide whether that rule applies to a transfer between a parent and a daughter-in-law.

some purpose other than to evidence a real debt. Indeed, wife testified that, when husband asked her to sign the notes and deeds, he told her that they were "to satisfy some tax purpose." At father's direction, husband recorded the deeds after husband's and wife's separation and only one month before husband filed his dissolution petition. That lapse in time suggests that, when he delivered the money, father, a lawyer, was not really concerned with securing repayment.

Furthermore, the later notes signed by husband (not the two signed by husband and wife)[8] require annual interest payments of $10,000, but no payments have ever been made. In fact, it is extremely difficult to understand how husband and wife could possibly have paid any of the notes on demand or otherwise. Interest on all four notes accrued at $36,500 per year. Husband and wife's combined earnings were never higher than $27,000 per year. Father could not realistically have expected the loans to be repaid and in fact made no request for repayment until after husband, his son, filed for dissolution.

The record contains no evidence of any bookkeeping by husband, wife or father in regard to the purported loans. Husband testified that he relied on father to keep an accurate accounting. If father kept an accounting, the record does not reveal it. It is not even clear precisely how much money father sent; we can only assume, as husband did, that father sent $365,000, the total amount of the notes eventually executed.

Although $365,000 to build a house in Corvallis might seem extraordinary, it is consistent with wife's testimony that, in addition to the house money, father's family gave them roughly $235,000 during their marriage. The amount is also consistent with wife's testimony that father wanted to help husband and wife "get into a house" and "[father] didn't care" how much it cost.

The facts clearly and convincingly show that none of the parties involved in the transaction consistently behaved as if the money was a loan, that there could have been no realistic

---

[8] Although this case involves only the two notes that wife signed, father claims that all the money for construction of the house was part of a single loan. Wife claims that all of the money was a gift. In determining whether the two notes are enforceable, we have to examine the entire series of transactions.

hope of repayment and that the transfers of money were consistent with previous gifts to husband and wife. The timing of events and the facts that the deeds were not recorded until after husband and wife separated and that requests for payment were not made until the dissolution petition was filed support our conclusion that the money was intended as gifts.

Affirmed.