Argued and submitted June 29, 1990, affirmed February 13, reconsideration denied March 17, petition for review denied May 28, 1991 (311 Or 426)

Carol KESTERSON,
Personal Representative of the Estate of
James A. Wilson, Deceased,
*Respondent,*

*v.*

Michael CRONAN,
*Appellant.*

(87C-650378; CA A60680)

806 P2d 134

David Gernant, Portland, argued the cause for appellant. With him on the briefs was Alan H. Tuhy, Portland.

Carlton P. Loennig, Portland, argued the cause for respondent. With him on the brief was Barton & Loennig, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from a judgment for plaintiff, as personal representative of James A. Wilson, deceased, for monthly payments due on defendant's promissory note to Wilson.[1] The only issue on appeal is whether defendant proved his affirmative defense that he was the donee of a gift *causa mortis,* by which Wilson delivered the note to him with the intention that the balance due under the note be forgiven on Wilson's death.[2] We affirm.

On appeal, the parties have stipulated to these facts: Wilson learned that he had terminal cancer in 1983 or 1984. At about that time, he arranged for Harold Buell, his friend and proposed personal representative, to have joint access to Wilson's safe deposit box and gave him a key. The box contained, among other things, promissory notes from Wilson's debtors. The notes were in envelopes on which the debtors' names were written. When Wilson gave Buell the key, he told him that the debts represented by the notes were to be forgiven when he died.

As early as 1984, defendant had become aware of Wilson's illness and had accepted Wilson's proposal to forgive any loans outstanding when Wilson died. Each time Wilson loaned money to defendant, he made it clear that the loans were personal deals between the two of them. In 1986, defendant and Wilson again discussed and agreed that defendant's indebtedness would be forgiven after Wilson died. By April, 1987, Wilson realized that he was going into the last phase of his illness. Realizing that his time was limited, he told Buell, who had not entered the safety deposit box earlier, to take the envelope marked with defendant's name out of the safe deposit box and to give it to defendant after Wilson died. He was to do the same with the other notes in the box, keeping the documents in his possession until Wilson's death. The morning after Wilson died in July, 1987, Buell delivered the envelopes, as directed.

---

[1] The judgment is for $5,783.56, the unpaid monthly payments for August through November, 1987, plus interest at 12 percent per annum from the date that each payment was due, plus plaintiff's costs, disbursements and attorney fees.

[2] Neither of the rulings on defendant's other two defenses, real party in interest or accord and satisfaction, is assigned as error on appeal.

The envelope with defendant's name on it contained: (1) a *copy* of the note at issue here, dated "April ___ 1984," for $65,000; (2) the original of a note dated February 8, 1985, for $12,000; (3) the original of a note dated December 30, 1983, for $25,000,[3] and (4) the original of an assignment, dated September 22, 1983, by defendant in favor of Wilson of part of defendant's life insurance proceeds, which defendant had suggested to assure payment of his debts, if he were to die before Wilson.

When Wilson died, the *original* of the April, 1984, note was among Wilson's personal effects. He had continued to accept payments from defendant on the note until his death in July, 1987, even though Buell had had possession of the envelope containing the copy since April, 1987. Defendant did not acquire possession of the copy of the note until the morning after Wilson died. The original note was never delivered to him.

■    In order for a gift of personal property, whether *inter vivos* or *causa mortis* to be valid, there must be a donative intent, coupled with the delivery of the subject of the gift to the donee with the intent that the donee have a present interest in it and an acceptance by the donee. A gift *causa mortis* differs from an *inter vivos* gift in that the former must be made in anticipation of impending death and, although title passes to the donee, it is an incomplete title that does not become absolute unless and until the donor dies from the impending peril before the donee and without having revoked the gift. An *inter vivos* gift vests absolute title in the donee. *Allen v. Hendrick,* 104 Or 202, 219, 206 P 733 (1922); *Waite v. Grubbe,* 43 Or 406, 73 P 206 (1903); *Deneff v. Helms,* 42 Or 161, 70 P 390 (1902); Brown, *Law of Personal Property,* § 51 (2d ed 1955). The one claiming a gift has the burden to prove the elements by clear and convincing evidence. *Hocks v. Jeremiah,* 92 Or App 549, 759 P2d 312 (1988).

■■    The principal dispute between the parties is whether there had been an adequate delivery of the note to defendant before Wilson died. The trial court held that there had not

---

[3] The 1983 note for $25,000 was paid out of the loan represented by the note at issue here. All of the other notes had been repaid by the time of Wilson's death, so the 1984 note was the only one remaining unpaid.

been, and we agree. Even if the envelope that Buell took from the safe deposit box had contained the original note signed by Wilson, it was not delivered to defendant before Wilson died. Defendant contends that Wilson delivered the envelope to Buell as defendant's agent; therefore, it had been delivered to him or for his use. *See Grignon v. Shope,* 100 Or 611, 197 P 317 (1921). The evidence, however, does not support an agency relationship between Buell and defendant.

There is no evidence that defendant knew that Buell had the key to the safe deposit box or that he had possession of the envelope in question. *See Jones v. Herr,* 39 Or App 937, 594 P2d 410 (1979). Defendant did not instruct Buell in any way and there is no evidence that he had the right to do so. Buell's services were performed for, and at the direction of, Wilson. As the court said in *Deneff v. Helms, supra,* 42 Or at 165:

> "A delivery to a third person with instructions to deliver to the intended donee at the death of the donor, the latter retaining dominion and custody over the property in the meanwhile, is ineffectual as a gift in either case, because the third party is constituted merely the agent or bailee of the donor."

There was no delivery of the note to defendant before Wilson died.

Although the record supports defendant's claim that Wilson intended to forgive the debt on his death, it does not show that Wilson intended defendant to have any ownership interest in the note before Wilson died or that the note had been delivered to defendant. Defendant continued to make, and Wilson continued to receive, payments on the note after the alleged gift was made until Wilson's death. Buell was instructed by Wilson to take the envelope with defendant's name on it from the safe deposit box and to deliver it to defendant after Wilson's death. Therefore, even if the note had been delivered to defendant before Wilson's death, the evidence shows that Wilson intended to make a gift that was to take effect at his death, not before. That was an attempted testamentary disposition that was not accompanied by a writing executed with the formalities of a will. *Allen v. Hendrick, supra,* 104 Or at 218; *Hocks v. Jeremiah, supra,* 92 Or App at 554.

Affirmed.